ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XII

| | | |
|---|---|---|
| JOSÉ F. NIEVES VÁZQUEZ Y OTROS<br><br>Recurrentes<br><br>v.<br><br>CONSEJO DE TITULARES Y JUNTA DE DIRECTORES DEL CONDOMINIO CONDADO DEL MARZO<br><br>Recurridos | TA2025RA00343 | *Revisión Judicial* procedente del Departamento de Asuntos al Consumidor<br><br>Querella Núm.: C-SAN-2023-0017202<br><br>Sobre: Ley de Condominios de Puerto Rico; Ley 129 de 16 de agosto de 2020 |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de enero de 2026.

Mediante *Recurso de Revisión Administrativa*, comparecen José F. Nieves Vázquez y su esposa María E. Rodríguez Campa; los señores Nicolás Santana Cabreja, Zulma Ramos Rodríguez, María Procaccino y Rosario Goyco-Carmoega (Recurrentes), y nos solicitan que revoquemos la *Resolución Sumaria* emitida el 16 de octubre de 2025, notificada el mismo día, por el Departamento de Asuntos del Consumidor (DACo).[1] En dicho dictamen administrativo, DACo declaró No Ha Lugar la Querella que presentó la parte recurrente y le ordenó pagar $1,000.00, en concepto de honorarios por temeridad, a favor del Consejo de Titulares del Condominio Condado del Mar (Recurrido o Consejo).

Por los fundamentos que expondremos a continuación, confirmamos la *Resolución Sumaria* impugnada.

**I.**

El 20 de octubre de 2023, los Recurrentes presentaron una Querella contra el Consejo de Titulares del Condominio Condado del Mar y su Junta de Directores, en la que cuestionaron los arrendamientos a corto plazo que

---

[1] Véase, Apéndice del Apelante, entrada 2 del Sistema Unificado de Manejo y Administración de Casos (SUMAC).

se llevan a cabo en dicho inmueble.[2] En su escrito, solicitaron, además, que DACo decretara nula e ilegal la práctica de permitir los arrendamientos a corto plazo en el Condominio y, a su vez, prohibiera su ejecución mediante una orden permanente de cese y desista.

Expusieron que estas "actividades lucrativas" que se llevan a cabo en el Condominio Condado del Mar (Condominio) "ha alterado y afectado adversamente la paz, tranquilidad y vida en comunidad de los querellantes, como titulares del condominio, al cambiarse el uso residencial para el que fue destinado por uno esencialmente comercial y turístico".

Además, aseguran que los condóminos no han autorizado el cambio de destino y uso residencial de los apartamentos desde que se sometió el Condominio al régimen de propiedad horizontal el 29 de enero de 1968. Entienden que este cambio de uso requiere el consentimiento unánime de los titulares y eso no ha ocurrido. Por tanto, concluyeron que las actuaciones de la Junta de Directores, de permitir el uso comercial y turístico de los apartamentos constituyen acciones nulas, proscritas por la Ley de Condominios, la escritura matriz y el reglamento del Condominio.

Para sustentar sus alegaciones, los Recurrentes aludieron a las disposiciones del Reglamento original del Condominio, que específicamente limitó el destino de los apartamentos para uso exclusivo de vivienda familiar. También, argumentaron, que el destino del Condominio es consistente con la zona exclusivamente residencial donde ubica el inmueble. Expusieron que, mediante la segunda enmienda al Reglamento del Condominio en el 2004 se incorporaron unas "Reglas y regulaciones [de] apartamentos y cabañas" que disponían que "[n]ingún apartamento o cabaña podrá ser alquilado por periodos menores de 6 meses".

No obstante, el 25 de mayo de 2012, los titulares del Condominio, reunidos en asamblea extraordinaria, votaron a favor de la aprobación de un nuevo Reglamento que sustituyó el Reglamento original, según

---

[2] *Id.*, entrada 3 de SUMAC.

enmendado. Según arguyeron, este nuevo reglamento no cambió el destino y uso de los apartamentos. A su entender, de sus cláusulas se desprende la intención de los condóminos de prohibir los arrendamientos a corto plazo.

Tras varias incidencias procesales, los Recurrentes solicitaron que DACo resolviera la controversia presentada de manera sumaria, pues la Querella se trataba de una controversia de derecho.[3] El Consejo se opuso a la pretensión de los Recurrentes y solicitaron que la Querella administrativa se resolviera de manera sumaria a su favor.[4]

En su escrito, la parte recurrida expuso que la Ley de Condominios no prohíbe los arrendamientos a corto plazo, a menos que la escritura matriz o el reglamento del condominio lo prohíba, y que tal prohibición no existe ni en la escritura matriz ni en el Reglamento del Condominio.

El 27 de noviembre de 2023, la parte recurrida presentó su *Contestación a Querella*, en la que negó las alegaciones en su contra.[5] No obstante, levantó como defensas afirmativas, entre otras, que el Reglamento del Condominio no prohíbe los arrendamientos a corto plazo. Asimismo, argumentó que la controversia presentada fue resuelta por el Tribunal de Apelaciones en otro caso, en el que determinó que los arrendamientos a corto plazo no constituyen un cambio de uso de los apartamentos. Por último, solicitaron la imposición de honorarios de abogado por ser un pleito frívolo.

Los Recurrentes replicaron a la solicitud de la parte recurrida.[6] Alegaron que el Consejo incumplió con la Regla 36.3(b)(2) y la Regla 36.3(a)(4) de Procedimiento Civil. Además, afirman que la parte recurrida no contestó los argumentos que expusieron en su solicitud de resolución sumaria; que las decisiones judiciales a las que aludió en su escrito no aplican a la situación presentada y que estos no tenían derecho a cobrar por honorarios de abogados.

---

[3] *Id.*, entrada 10 de SUMAC.
[4] *Id.*, entrada 11 de SUMAC.
[5] *Id.*, entrada 4 de SUMAC.
[6] *Id.*, entrada 12 de SUMAC.

Después de examinar las posiciones de las partes y la prueba documental sometida, DACo desestimó la Querella que presentaron los Recurrentes.[7] A su vez, ordenó el pago de $1,000.00 en honorarios de abogados a favor del Consejo. Basó su decisión en la Ley de Condominios de Puerto Rico, que dispone que "los arrendamientos a corto plazo no se pueden prohibir, salvo que en la escritura matriz o en el reglamento, exista un término mínimo de arrendamiento".

A tenor con lo anterior, determinó que no surge de la escritura matriz del Condominio y de su nuevo Reglamento una prohibición expresa sobre los arrendamientos a corto plazo. Por consiguiente, decretó que los arrendamientos a corto plazo que se llevan a cabo en el Condominio no constituyen una actividad ilegal y fraudulenta, como tampoco establecen un cambio de uso y destino de los apartamentos. Ello así, debido a que estos alquileres a corto plazo no cambian la naturaleza residencial del uso que se le brinda.

En desacuerdo, los Recurrentes acudieron ante este foro intermedio mediante el recurso de epígrafe en el que señalaron que DACo cometió los siguientes cuatro errores:

> PRIMER ERROR: EL DACO ERRÓ AL DESESTIMAR SUMARIAMENTE LA QUERELLA Y CONCLUIR QUE LOS ARRENDAMIENTOS A CORTO PLAZO NO SON UNA ACTIVIDAD COMERCIAL INCOMPATIBLE CON EL USO Y DESTINO RESIDENCIAL DEL CONDOMINIO.

> SEGUNDO ERROR: EL DACO ERRÓ AL DESESTIMAR SUMARIAMENTE LA QUERELLA SIN RESOLVER LA CONTROVERSIA SOBRE LA ILEGALIDAD E INCONSTITUCIONALIDAD DE LA RETROACTIVIDAD DEL ARTÍCULO 40 DE LA LEY DE CONDOMINIO QUE GOBIERNA LOS ARRENDAMIENTOS A CORTO PLAZO EN CONDOMINIOS.

> TERCER ERROR: EL DACO ERRÓ EN SU INTERPRETACIÓN DEL ARTÍCULO 40 DE LA LEY DE CONDOMINIOS Y CONCLUIR QUE LOS ARRENDAMIENTOS A CORTO PLAZO EN CONDADO DEL MAR NO ESTABAN PROHIBIDOS EXPRESAMENTE POR LA ESCRITURA MATRIZ Y EL REGLAMENTO.

> CUARTO ERROR: EL DACO ERRÓ AL IMPONERLE A LOS RECURRENTE HONORARIOS DE ABOGADOS POR TEMERIDAD.

---

[7] *Id.*, entrada 2 de SUMAC.

## II.

### A.

El Artículo 4.002 de la Ley Núm. 201-2003, *Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003*, 4 LPRA sec. 24 *et seq.* (Ley Núm. 201-2003), establece que el Tribunal de Apelaciones tendrá jurisdicción para revisar "como cuestión de derecho [...] las decisiones finales de los organismos y agencias administrativas". 4 LPRA sec. 24u. Del mismo modo, el foro intermedio tendrá competencia para atender, mediante recurso de revisión judicial, las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas, según dispone el inciso (c) del Artículo 4.006 de la Ley Núm. 201-2003, 4 LPRA sec. 24y.

Por su parte, la Sección 4.5 de la Ley Núm. 38 de 30 de junio de 2017, *"Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, 3 LPRA sec. 9675, (LPAUG), que versa sobre el alcance de la revisión judicial, dispone que este tribunal sostendrá las determinaciones de hechos de las decisiones de las agencias, si se basan en evidencia sustancial que obra en el expediente administrativo; revisará en todos sus aspectos las conclusiones de derecho; y podrá conceder al recurrente el remedio apropiado si determina que a éste le asiste el derecho. Mediante la revisión judicial, esta curia debe evaluar que la decisión administrativa encuentre apoyo en la evidencia sustancial que obre en la totalidad del expediente administrativo.

El concepto *evidencia sustancial* se ha definido como aquella "prueba relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018), *Hilton Hotels v. Junta Salario Mínimo*, 74 DPR 670, 686 (1953), refrendados en *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 127-128 (2019). El *expediente administrativo*, por su parte, constituye la base exclusiva para la decisión de la agencia en un procedimiento adjudicativo, así como para la revisión judicial ulterior. Sec. 3.18 de la LPAUG, 3 LPRA sec. 9658; *Graciani Rodríguez v. Garaje Isla Verde, supra,* pág. 128. Por

igual, examinamos que el ente gubernamental haya realizado una aplicación o interpretación correcta de las leyes o reglamentos que se le ha encomendado administrar. Finalmente, auscultamos que el organismo haya actuado dentro de los parámetros de su ley habilitadora, no de forma arbitraria, irrazonable ni haya lesionado derechos constitucionales fundamentales. Véase, *Torres Rivera v. Policía de PR*, 196 DPR 606, 628 (2016).

Por consiguiente, al momento de justipreciar la valoración y razonabilidad de las decisiones administrativas adoptadas por las agencias del poder ejecutivo, los tribunales tenemos la obligación de ejercer un juicio independiente de las disposiciones legales para determinar si una agencia ha actuado o no dentro de los límites de su autoridad estatutaria, incluso en los casos de ambigüedad legislativa. Véase, *Loper Bright Enterprises v. Raimondo*, 603 US 369 (2024).[8]

Claro está, según ha pautado el Tribunal Supremo federal, las interpretaciones y los dictámenes administrativos —realizados por virtud del cumplimiento de un deber oficial y basados en su experiencia especializada— pueden constituir un cuerpo de experiencia y un juicio informado ("body of experience and informed judgment") al que los foros revisores y los litigantes pudiéramos recurrir en cuestiones jurídicas. *Id.*, pág. 2259. Así surge el axioma de la doctrina de revisión judicial, en que los tribunales apelativos estamos llamados a otorgar amplia deferencia a las decisiones de las agencias administrativas. Ello, en atención a la experiencia y pericia que se presume tienen esos organismos para atender y resolver los asuntos que le han sido delegados. *Graciani Rodríguez v. Garaje Isla Verde*, *supra*, pág. 126.

---

[8] En *Loper Bright Enterprises v. Raimondo*, supra, resuelto el 28 de junio de 2024, el Tribunal Supremo federal revocó la doctrina de deferencia establecida en el caso *Chevron USA, Inc. v. Natural Resources Defense Council*, 467 US 837 (1984). Con ello, además, se propende al fortalecimiento de la separación de poderes. Véase, *Loper Bright Enterprises v. Raimondo*, supra, pág. 2274 (Op. Conc. Juez Thomas).

Ahora, el peso persuasivo de la determinación administrativa va a depender de la minuciosidad en su consideración, de la validez de su razonamiento, así como de su congruencia con pronunciamientos anteriores y posteriores. Véase, *Skidmore v. Swift & Co.,* 323 US 134, 139-140 (1944), citado con aprobación en *Loper Bright Enterprises v. Raimondo,* supra, pág. 2259.

**B.**

De ordinario, las Reglas de Procedimiento Civil no aplican de manera automática a los procedimientos en las agencias del Gobierno de Puerto Rico. *Pérez v. VPH Motors Corp.*, 152 DPR 475, 484 (2000). Ahora bien, nuestro Tribunal Supremo ha establecido que, en casos apropiados, "'nada impide que [...] se adopten normas de las Reglas de Procedimiento Civil para guiar el curso del proceso administrativo'", siempre que estas no sean incompatibles con dicho procedimiento y propicien una solución justa, rápida y económica de los casos. *Id.*, pág. 485. Cónsono con lo anterior, la LPAUG reconoce y establece la resolución sumaria de controversias que así lo requieran. Sección 3.7 de la LPAUG, 3 LPRA sec. 9647. Por tanto, las disposiciones de la Regla 36 de Procedimiento Civil se pueden aplicar al procedimiento administrativo. 32 LPRA Ap. V, R. 36.

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, gobierna el mecanismo de la sentencia dictada sumariamente. La norma procesal permite a los tribunales disponer parcial o totalmente de litigios civiles. *León Torres v. Rivera Lebrón,* 204 DPR 20, 51 (2020). De esta manera, se aligera la conclusión de los pleitos, sin la celebración de un juicio en sus méritos, siempre y cuando no exista una legítima controversia de hechos medulares, de modo que lo restante sea aplicar el derecho. Véase, *Roldán Flores v. M. Cuebas et al.,* 199 DPR 664, 676 (2018); *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 109 (2015); *Jusino et als. v. Walgreens,* 155 DPR 560, 576 (2001). Así se propende a la solución justa, rápida y económica de los litigios de naturaleza civil en los cuales no exista una controversia genuina de hechos materiales. *Pérez Vargas v. Office Depot,* 203 DPR 687,

699 (2021). Por ello, "[l]a controversia debe ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario". *Ramos Pérez v. Univisión,* 178 DPR 200, 213 (2010).

La sentencia sumaria sólo debe dictarse en casos claros. Por tanto, cuando no existe una certeza prístina sobre todos los hechos materiales que motivaron el pleito, no procede que se dicte sentencia sumaria. *Pérez Vargas v. Office Depot,* supra, pág. 699 y los casos allí citados. Por ser éste un remedio de carácter discrecional, "[e]l sabio discernimiento es el principio rector para su uso porque, mal utilizada, puede prestarse para despojar a un litigante de 'su día en corte', principio elemental del debido proceso de ley". *Mgmt. Adm. Servs. Corp. v. E.L.A.,* 152 DPR 599, 611 (2000); *León Torres v. Rivera Lebrón,* supra, pág. 44. Siendo así, procede que se dicte la sentencia sumaria "cuando surge de manera clara que, ante los hechos materiales no controvertidos, el promovido no puede prevalecer ante el Derecho aplicable y el Tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia". *Meléndez González et al. v. M. Cuebas,* supra, págs. 109-110, que cita a *Const. José Carro v. Mun. Dorado,* 186 DPR 113 (2012).

Por su parte, la Regla 36.3 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36.3, establece ciertos requisitos de forma en extremo detallados con los que debe cumplir una solicitud de sentencia sumaria, al igual que su oposición. *León Torres v. Rivera Lebrón,* supra, pág. 43. Conforme con ello, la parte promovida no puede descansar en las aseveraciones o negaciones consignadas en su alegación. Por el contrario, está obligada a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho el promovente en su solicitud puesto que, de incumplir, corre el riesgo de que se dicte sentencia sumaria en su contra, de proceder en derecho. (Citas omitidas). *Id.*

En cuanto a la revisión *de novo* de un dictamen sumario o la denegación de la resolución abreviada, este tribunal revisor se encuentra en la misma posición que el foro de primera instancia al determinar si procede

o no una sentencia sumaria. Sin embargo, al revisar la determinación del tribunal primario, estamos limitados de dos maneras: (1) únicamente consideramos los documentos que se presentaron ante el foro de primera instancia; y (2) sólo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, así como si el derecho se aplicó de forma correcta. Este tribunal deberá, además, realizar un examen dual que consiste, primero, en analizar los documentos que acompañan la solicitud de sentencia sumaria y en la oposición, así como aquellos que obren en el expediente del tribunal; y segundo, determinar si el oponente de la moción controvirtió algún hecho material y esencial; o si hay alegaciones de la demanda que no han sido refutadas en forma alguna por los documentos. *Vera v. Dr. Bravo*, 161 DPR 308, 333 (2004).

### C.

La Ley Núm. 129-2020, Ley de Condominios de Puerto Rico, 31 LPRA sec. 1921, según enmendada, (Ley de Condominios), derogó la antigua Ley Núm. 104 de 23 de junio de 1958, *Ley de Condominios de Puerto Rico*. Esta ley originalmente fue promulgada con el propósito de promover la convivencia de las familias puertorriqueñas en las áreas urbanas y la utilización de construcciones de multipisos sometidos al Régimen de Propiedad Horizontal. Véase *Arce v. Caribbean Home Const. Corp.*, 108 DPR 225 (1978); *Maldonado v. Consejo de Titulares*, 111 DPR 427 (1981).

Al interpretar la aplicabilidad de Ley de Condominios, *supra*, el Tribunal Supremo de Puerto Rico expresó que:

> La Ley Núm. 129-2020 entró en vigor de manera inmediata y estableció que "sus disposiciones regir[ía]n a todo inmueble sometido al régimen de Propiedad Horizontal, *irrespectivo de la fecha en que fuera sometido a dicho régimen*".[9] (Énfasis en el original).

---

[9] Véase *Con. Tit. Centro Int'l Torre II v. PRCI*, 210 DPR 403, 414 (2022), citando el Artículo 76 de la Ley de Condominios; *Con. Tit. Centro Int'l Torre II v. PRCI*, supra, en la nota alcalce 14 que expresa:
> Para propósito de la controversia ante nos, es menester señalar que PRCI advino titular de la oficina 504 en 2017. Entiéndase, antes de la aprobación de la Ley Núm. 129-2020 (31 LPRA sec. 1921 *et seq.*). No obstante, por mandato expreso, esta es la Ley que aplicará a esta controversia[...]

Este estatuto tiene primacía sobre cualquier otra norma que contravenga sus cláusulas. *Con. Tit. Centro Int'l Torre II v. PRCI*, supra. Esto quiere decir que "cualquier disposición claramente contraria a sus disposiciones que contenga la escritura matriz o el Reglamento de Administración sería nula". *Id.*

En su parte pertinente, el Artículo 40 de la Ley de Condominios, 31 LPRA sec. 1922l, autoriza los arrendamientos a corto plazo. No obstante, también dispone en qué casos este tipo de alquiler está prohibido. En específico, establece que:

> Salvo que en la **escritura matriz o en el reglamento**, exista una **prohibición expresa o que establezca un término mínimo de arrendamiento**, no se podrá prohibir el arrendamiento de los apartamentos a corto plazo en los inmuebles sometidos al Régimen de Propiedad Horizontal.[10]
> En el Reglamento se podrá regular la forma en que se llevarán a cabo los arrendamientos de los apartamentos a corto plazo, incluyendo requerir un término mínimo de noches a arrendar y podrá imponer una cuota mensual especial, la cual no podrá ser mayor a la cuota de mantenimiento, a los titulares que arrienden su apartamento a corto plazo.
> El Administrador, informará al Centro de Recaudación de Ingresos Municipales anualmente las propiedades sujetas a contratos de arrendamientos a corto plazo.

**D.**

Sobre la retroactividad de las leyes, el Artículo 3 del derogado Código Civil del 1930, 31 LPRA sec. 3, dispone que:

> Las leyes no tendrán efecto retroactivo, si no dispusieren expresamente lo contrario.
> En ningún caso podrá el efecto retroactivo de una ley perjudicar los derechos adquiridos al amparo de una legislación anterior.

Con un lenguaje similar, el Artículo 9 del Código Civil del 2020, 31 LPRA sec. 5323, establece que:

> La ley no tiene efecto retroactivo, excepto cuando se dispone expresamente lo contrario. El efecto retroactivo de una ley, no puede perjudicar los derechos adquiridos al amparo de una ley anterior.

Como norma general, para que se le pueda dar una interpretación retroactiva a una ley debe constar expreso o surgir claramente del estatuto. *Nieves Cruz v. U.P.R.*, 151 DPR 150, 158 (2000); *Vázquez v. Morales*, 114

---

[10] El Artículo 3, inciso g, de la Ley de Condominios, 31 LPRA sec. 1921b, define el arrendamiento a corto plazo como "cualquier arrendamiento por un término menor a noventa (90) días consecutivos".

DPR 822, 831 (1983). De no estar claro del texto del estatuto la aplicación retroactiva de la ley, "entonces la ley aplicable al asunto es la que estaba vigente cuando ocurrieron los hechos que dan lugar a la causa de acción". *Nieves Cruz v. U.P.R.*, supra; *Arce Oliveras v. E.L.A.*, 122 DPR 877, 879 (1988); *Kobler v. Escambrón Development Corp.*, 85 DPR 743, 744 (1962).

El Tribunal Supremo ha expresado que, pese a lo anterior, en circunstancias particulares procede la aplicación retroactiva de una ley, incluso cuando no esté expreso en el lenguaje del estatuto, cuando "tal aplicación es la más razonable a la luz del propósito legislativo que la inspiró". *Mun. de Añasco v. ASES et al.*, 188 DPR 307, 325 (2013); *Soc. Asist. Leg. v. Ciencias Forenses*, 179 DPR 849, 862 (2010).

### E.

La Regla 27.3 del *Reglamento de Procedimientos Adjudicativos del Departamento de Asuntos del Consumidor* de 14 de junio de 2011 (Reglamento Núm. 8034) autoriza al DACo a imponer el pago de honorarios de abogado, por concepto de temeridad, "a la parte perdidosa".

En cuanto al procedimiento que regirá, la norma remite a la Regla 44 de Procedimiento Civil, 32 LPRA Ap. V. Como se conoce, el ordenamiento procesal civil provee para el pago de honorarios de abogado a favor de la parte que prevalece. En general, la imposición de honorarios de abogado procede cuando una parte ha actuado con temeridad o frivolidad. *Torres Vélez v. Soto Hernández,* 189 DPR 972, 993 (2013); Regla 44.1 (d) de Procedimiento Civil, *supra.*

A pesar de que la norma procesal no describe en qué consiste la conducta temeraria, es norma asentada que se incurre en temeridad cuando se promueve un pleito frívolo, o se provoca un litigio que se pudo evitar, o se prolonga indebidamente, obligando a la otra parte a incurrir en gastos innecesarios. *Marrero Rosado v. Marrero Rosado,* 178 DPR 476, 504 (2010); *Colón Santos v. Coop. Seg. Mult. P.R.,* 173 DPR 170, 188 (2008); *P.R. Oil v. Dayco,* 164 DPR 486, 511 (2005); *Domínguez v. GA Life,* 157 DPR 690, 706

(2002). A esos efectos, la sanción pecuniaria que se impone por conducta temeraria tiene el propósito de "disuadir la litigación frívola y fomentar las transacciones mediante sanciones que compensen a la parte victoriosa los perjuicios económicos y las molestias producto de la temeridad de la otra parte". *Marrero Rosado v. Marrero Rosado, supra*, pág. 505. Por consiguiente, el fin de la imposición de honorarios de abogado es penalizar a la parte que por su "terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconvenientes de un pleito". *C.O.P.R. v. S.P.U.*, 181 DPR 299, 342 (2011).

La adjudicación de si una parte obró o no temerariamente descansa en la sana discreción del juzgador. *P.R. Oil v. Dayco, supra*, pág. 511. Claro, por lo general, la imposición de honorarios de abogado, por razón de temeridad, no procede en un caso cuya controversia de hechos resulte novel. Sin embargo, el hecho solo de que la cuestión en litigio sea novedosa no constituye carta blanca para actuar en forma temeraria. *Corpak, Art Printing v. Ramallo Brothers*, 125 DPR 724, 738 (1990). Es decir, el hecho de que se trate de una desavenencia honesta no constituye excusa para una conducta obstinada, contumaz, temeraria o frívola.

En cuanto a nuestro rol apelativo, la determinación sobre temeridad en sí no será revisada, a menos que se demuestre abuso de discreción. *Jarra Corp. v. Axxis Corp.* 155 DPR 764, 779 (2001). Del mismo modo, la suma concedida no será alterada, salvo que resulte insuficiente o excesiva. *Corpak, Art Printing v. Ramallo Brothers, supra*, pág. 740.

### III.

Los Recurrentes alegan que el DACo erró al resolver sumariamente la controversia en cuanto a que los arrendamientos a corto plazo no cambiaron al uso y destino residencial del Condominio Condado del Mar. Por su parte, arguyen que dichos alquileres constituyen una actividad comercial y que la misma es incompatible con el uso residencial de los apartamentos, según fueron constituidos. En apoyo a su planteamiento, aluden a lo resuelto por

el Tribunal Supremo en el caso *Fernández Martínez v. RAD-MAN San Juan III-D, LLC*, 208 DPR 310, 343-344 (2021),[11] y a otras opiniones a su entender persuasivas.

De igual manera, alegan que la aplicación retroactiva del Artículo 40 transgrede los derechos propietarios de los titulares que adquirieron sus apartamentos bajo otro estado de derecho. En su opinión, el efecto retroactivo de la ley no puede alterar el uso y destino de vivienda singular familiar y residencial que se estableció cuando se sometió el Condominio al régimen de propiedad horizontal, y con ello permitir el uso comercial y turístico de los alquileres a corto plazo. Entienden que la retroactividad del artículo 40 es "ilegal e inconstitucional al menoscabar las obligaciones contractuales contraídas previamente".

Bajo este razonamiento, aseguran que la escritura matriz y el historial de reglamentos del Condominio restringen los usos de los apartamentos a aquellos exclusivamente de carácter residencial, por lo que se excluye expresamente los alquileres a corto plazo. Argumentan que la intención de la escritura matriz y el Reglamento de 1968 fue prohibir este tipo de actividad, por ser incompatible con el uso residencial de los apartamentos. Mencionan que, en el Reglamento de 2004, se prohibió, expresamente, los alquileres de menos de seis meses. Aunque, posteriormente, esta prohibición se eliminó con la incorporación del Reglamento de 2014, que actualmente rige la convivencia en dicho Condominio. Sin embargo, la parte recurrente entiende que la eliminación de tal prohibición es nula radicalmente, al modificar el uso y destino residencial que establece la escritura matriz, para lo que se requería la aprobación unánime de los titulares.

Por su parte, el Consejo aduce que la ley que cuestiona la parte recurrente es clara y libre de ambigüedades, por lo que no puede ser

---

[11] Cabe señalar que lo resuelto en *Fernández Martínez v. RAD-MAN San Juan III-D, LLC,* supra, no aplica a la controversia de autos, pues se trataba de una violación a servidumbres de equidad, las cuales se rigen por otras normas distintas a las que regulan los condominios sometidos al Régimen de Propiedad Horizontal.

interpretada de otra forma. Opina que la pretensión de los Recurrentes, de darle un significado distinto a la intención legislativa, es usurpar las prerrogativas de la Rama Legislativa. Así pues, expone que lo dispuesto en el Artículo 40 de la Ley de Condominios, *supra*, "no puede ser motivo de una interpretación extraña a lo que el poder legislativo tuvo a bien regular de forma clara [...]".

A su vez, sostiene que tanto la escritura matriz como el Reglamento del Condominio no contienen una prohibición para que los titulares arrienden sus apartamentos por periodos cortos de tiempo, por lo que no se puede prohibir que el dueño de un apartamento arriende su propiedad a corto plazo, según provee el Artículo 40 de la Ley de Condominio, *supra*.

El Consejo también asegura que la aplicación retroactiva del Artículo 40 no es contrario a derecho, como afirma la parte recurrente. Argumenta que este asunto fue resuelto por nuestro Alto Foro en el caso *Consejo de Titulares v. Williams Hospitality*, 168 DPR 101 (2006), que resolvió que la aplicación retroactiva de una ley sirve para cumplir el propósito del legislador.

Por otro lado, asegura que el arriendo de un apartamento a corto o largo plazo no cambia la naturaleza residencial de los apartamentos. Explica que el periodo de tiempo del alquiler no determina el uso comercial o no de la propiedad. Veamos.

Después de una revisión de *novo* del expediente, determinamos que la petición de resolución sumaria presentada por los Recurrentes cumple esencialmente con los requisitos de forma para este tipo de moción. En tanto, la oposición presentada por el Consejo no cuestiona los hechos presentados por la parte recurrente, como tampoco enumera los que entiende no están en controversia. De modo que, las determinaciones de hechos presentadas por los Recurrentes se dan por incontrovertidas, según el estándar de revisión que establece la Regla 36, *supra*.

Conforme a lo anterior, no albergamos duda de que en este caso no existe controversia sustancial de hechos y que solamente nos corresponde

determinar si DACo interpretó y aplicó correctamente el derecho a la controversia presentada.

Como mencionamos, el Artículo 40 de la Ley de Condominios, *supra*, establece claramente que "no se podrá prohibir el arrendamiento de los apartamentos a corto plazo en los inmuebles sometidos al Régimen de Propiedad Horizontal", a menos que en la escritura matriz o en el reglamento se prohíba expresamente o disponga de un término mínimo de arrendamiento. Tampoco, la disposición prohíbe que el Consejo regule los arrendamientos de los apartamentos a corto plazo, ya sea mediante el establecimiento de un término mínimo de noches, la imposición de una cuota mensual especial o su prohibición expresa. *Id.*

Ciertamente, al revisar la prueba documental sometida, advertimos que ni la escritura matriz ni el Reglamento del Condominio prohíbe el arrendamiento a corto plazo. En particular, la escritura matriz dispone lo siguiente:

> Las demás unidades descritas como apartamientos **se dedicarán a usos residenciales** y podrán ser ocupados para residencias permanentes o **transitorias** [...]. (Énfasis suplido).

En tanto, el Artículo 29 del Reglamento de 2014, dispone que:

> El Titular en el disfrute y aprovechamiento de su apartamento tendrá que dedicarlo obligatoriamente al destino que se le asignó en la escritura matriz.

Mientras, el Artículo 39 del mismo cuerpo de normas establece que:

> El uso y disfrute de cada apartamento estará sujeto a las reglas siguientes:
>
> a) Se dedicará exclusivamente a fines consignados en la escritura matriz.

De lo anterior, queda claramente establecido que no existe prohibición para los arrendamientos a corto plazo y que el uso de los apartamentos será exclusivamente residencial. No obstante, los Recurrentes alegan que el alquiler a corto plazo constituye un cambio de uso por ser una actividad comercial. Sin embargo, la Ley de Condominios no califica ni define dichos arrendamientos como una actividad comercial. Por el contrario, el Artículo 3(g), *supra*, define el arrendamiento a corto plazo como "**cualquier**

**arrendamiento** por un término menor a noventa (90) días consecutivos". (Énfasis suplido). Es decir, el titular puede arrendar su propiedad sin que ello signifique un cambio en el uso y destino. Como correctamente concluyó DACo, "el alquiler por períodos cortos no cambia la naturaleza residencial del uso que se le brinda".

Ahora bien, los Recurrentes sostienen que la aplicación retroactiva del Artículo 40 es ilegal e inconstitucional, pues afecta los derechos adquiridos por los titulares del Condominio. No le asiste la razón.

En *Consejo de Titulares v. Williams Hospitality*, supra, pág. 109, nuestro Tribunal Supremo resolvió que no existe un derecho adquirido cuando se trata de una situación jurídica objetiva. Determinó que no toda situación jurídica durante la vigencia de una ley anterior constituye un derecho adquirido a los fines de limitar la retroactividad de una ley posterior. Citando al tratadista de derecho civil, J. Santos Briz, expuso:

> ...para que pueda hablarse de derechos adquiridos propiamente tales es necesario que se trate de situaciones subjetivas, cuya extensión y alcance son determinados por un acto o negocio jurídico, no directamente por la ley, que se limita a hacer posible la conclusión de ese acto o negocio (un contrato, por ejemplo). Este negocio singular e individual no puede ser afectado por la norma posterior. En cambio, las situaciones jurídicas objetivas (por ejemplo, el régimen de la propiedad) pueden ser modificadas por leyes posteriores. J. Santos Briz y otros, Tratado de Derecho Civil, Barcelona, Ed. Bosch, 2003, T.I, pág. 294.

Cónsono con lo anterior, y en atención al propósito de la nueva Ley de Condominios, podemos concluir que la aplicación retroactiva del Artículo 40 no es ilegal ni inconstitucional. Como expusimos, dicha legislación aplica a todo inmueble sujeto al Régimen de Propiedad Horizontal, "irrespectivo de la fecha en que fuera sometido a dicho régimen". Artículo 76 de Ley de Condominios, *supra*; *Con. Tit. Centro Int'l Torre II v. PRCI*, supra.

Por último, los Recurrentes cuestionan la imposición de honorarios de abogado por temeridad. Entienden que reclamo no es frívolo y se encuentra fundamentado correctamente en evidencia sustancial. Además, de tratarse de una situación fáctica específica del Condominio Condado del

Mar, revestida de orden público y argumentado bajo una apreciación honesta del derecho aplicable.

Por su parte, el Consejo sostiene que los Recurrentes actuaron con temeridad y contumacia al presentar el recurso apelativo. Argumenta que el Artículo 65 de la Ley de Condominios, 31 LPRA sec. 1923j, dispone la imposición obligatoria de honorarios de abogado por temeridad.

De ordinario, este foro intermedio no revisa la imposición de honorarios de abogado por temeridad, a menos que se demuestre que el foro recurrido incurrió en un abuso de discreción. *Jarra Corp. v. Axxis Corp.*, supra. Así pues, de lo expuesto anteriormente, no vemos que DACo haya abusado de su discreción. Por consiguiente, no intervendremos con la imposición de los honorarios de abogado por la cantidad de $1,000.00 a favor del Consejo.

## IV.

Por los fundamentos que anteceden, confirmamos la *Resolución Sumaria* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones